IN RE APPEAL OF SUSPENSION OF HUFFER FROM CIRCLEVILLE HIGH SCHOOL.

[Cite as In re Appeal of Suspension of Huffer from Circleville High School (1989), 47 Ohio St. 3d 12.]

(No. 88-1397—Submitted September 19, 1989—Decided November 22, 1989.)

14

*Roy H. Huffer, Jr.,* for appellee.
*Squire, Sanders & Dempsey* and *David W. Alexander,* for appellant.

DOUGLAS, J.

I

The first issue before us is whether this case is moot since Huffer has graduated from high school.

In *State, ex rel. The Repository,* v. *Unger* (1986), 28 Ohio St. 3d 418, 420, 28 OBR 472, 474, 504 N.E. 2d 37, 39, we held that a case is not moot if the issues are " ' " 'capable of repetition, yet evading review.' " ' "

Likewise, if a case involves a matter of public or great general interest, the court is vested with the jurisdiction to hear the appeal, even though the case is moot. *Franchise Developers, Inc.* v. *Cincinnati* (1987), 30 Ohio St. 3d 28, 30 OBR 33, 505 N.E. 2d 966.[5]

The issue of the authority of local school boards to make rules and regulations is of "great general interest." The issue before us is certainly "capable of repetition," yet it may "evade review," since students who challenge school board rules generally graduate before the case winds its way through the court system. For these reasons, we decide this issue of school board authority.

II

Ohio has a rich tradition of local control of its public school districts. Section 3, Article VI of the Ohio Constitution states that "[p]rovision shall be made by law for the organization, administration and control of the public school system of the state * * * provided, *that each school district * * * shall have the power by referendum vote to determine for itself * * * the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts.*" (Emphasis added.)

R.C. 3313.20 provides, in pertinent part, that "[t]he board of education shall make such rules as are necessary for * * * the government of its * * * pupils of its schools * * *." R.C. 3313.47 declares, in part, that "[e]ach * * * local board of education shall have the management and control of all the public schools * * * in its respective district. * * *"

Ohio courts have spoken of the broad power of Ohio's boards of education based upon earlier versions of these statutes.

*Brannon* v. *Bd. of Edn.* (1919), 99 Ohio St. 369, 124 N.E. 235, in paragraph two of the syllabus, held that "[a] court has no authority to control the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board, upon any questions it is authorized by law to determine * * *." In *Brannon, supra,*

---

[5] We note that the phrase used in *Franchise Developers, supra,* is "great public or general interest." The proper terminology is "public or great general interest." See Section (B)(2)(d), Article IV of the Ohio Constitution and Sections 3(A) and 4(C), Rule II of the Rules of Practice of the Supreme Court of Ohio.

in paragraph three of the syllabus, the court found that "[a] court will not restrain a board of education from carrying into effect its determination of any question within its discretion, except for an *abuse of discretion* or for fraud or collusion \* \* \*." (Emphasis added.)

In *Greco* v. *Roper* (1945), 145 Ohio St. 243, 30 O.O. 473, 61 N.E. 2d 307, paragraph one of the syllabus, we held that "\* \* \* a board of education is charged with the management and control of the public schools in its district and is vested with authority to make such rules and regulations as it deems necessary for its government \* \* \*."

The United States Supreme Court in *Bd. of Edn. of Rogers* v. *McCluskey* (1982), 458 U.S. 966, held that the trial court must defer to the board of education's reasonable interpretation of its rule on mandatory suspension of students "under the influence of drugs."

In *Wood* v. *Strickland* (1975), 420 U.S. 308, 326, the court found that federal courts should not substitute their judgment for school administrators' decisions, since the system of public education in this country rests upon the discretion and judgment of school administrators and school board members. Thus, the United States Supreme Court and Ohio courts have established that school boards have wide discretion in adopting rules and regulations for governing schools.

In this case, the Circleville Board of Education adopted Policy No. 622, which states that "[t]he Circleville Board of Education has defined \* \* \* policies addressing substance use \* \* \*

to respond \* \* \* to problem behaviors occurring in the school setting. \* \* \* A student shall not knowingly \* \* \* *use,* transmit, apply or be *under the influence*[fn.] of any \* \* \* alcoholic beverage \* \* \*. It is recognized that the determination of the school authorities may be distinct and separate from any determination of the courts."

The footnote to the above passage states:

"Under the influence is defined as manifesting signs of chemical misuse such as staggering, reddened eyes, *odor of chemicals,* nervousness, restlessness, falling asleep/dozing in class, memory loss, abusive language or any other behavior not normal for the particular pupil." (Emphasis added.)

Appellant argues that the school board, with its broad statutory grant of authority, adopted Policy No. 622 to combat the growing epidemic of alcohol and drug abuse plaguing young people today and that the rule is reasonably connected with the school board's responsibility of preventing such abuse in the school setting.

A school board certainly has the right to prohibit students' use of drugs and alcohol in the school setting.[6] We are all aware of the current drug and alcohol crisis and the need to educate young people as to the hazards of substance abuse. If a school board cannot establish a rule to stop the use of drugs and alcohol among its students absent the students' becoming disruptive, then the school administrators will be helpless to enforce and maintain discipline in our schools. Such a restriction would simply be unreasonable.

Appellee argues, however, that the

---

[6] Ohio law in effect in 1986 provided that no person under the age of nineteen years shall purchase beer or be furnished beer by anyone other than a parent, legal guardian or a physician in the regular line of his practice. R.C. 4301.63, 4301.631 and 4301.69.

board of education abused its discretion when it adopted Policy No. 622, which defines "under the influence" as exhibiting the odor of chemicals, reddened eyes, restlessness, nervousness, etc. Appellee asserts that the presence of one of these symptoms does not mandate that a student is "under the influence."

We agree that a student who has one of these symptoms is not necessarily "under the influence" of alcohol or drugs. However, these symptoms are a starting point in any investigation by a school administrator. During an investigation, the administrator must uncover further corroborating evidence of the use of alcohol or drugs to find a student "under the influence." This is exactly what happened here. The assistant coach smelled alcohol on Huffer's breath and notified the head coach. The head coach questioned Huffer about whether he had been drinking alcohol and Huffer admitted drinking beer before attending wrestling practice. Thus, the board's list of symptoms served as indicia of when a student was "under the influence" and aided in the detection of alcohol use by the student. The board's rule reasonably regulates the use of intoxicating beverages by students in the school setting. This is a matter of proper concern for a school board. The board did not abuse its discretion when it adopted the rule.

### III

Appellee further argues that Policy No. 622 is overbroad. Both the trial court and the court of appeals found the policy overbroad, but failed to articulate any standard in reaching that conclusion.

The overbreadth doctrine is generally applied in the First Amendment area. See *New York* v. *Ferber* (1982), 458 U.S. 747, 769, and *Broadrick* v.

*Oklahoma* (1973), 413 U.S. 601, 611-613. It is also applied in the field of criminal law. See *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 103-104, 512 N.E. 2d 598, 607, certiorari denied (1988), 484 U.S. ___, 98 L. Ed. 2d 1022, 108 S. Ct. 1060, and *State* v. *McDonald* (1987), 31 Ohio St. 3d 47, 48, 31 OBR 155, 156, 509 N.E. 2d 57, 59.

In *Broadrick, supra,* at 611-616, the court described the overbreadth doctrine and found:

"It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Herndon* v. *Lowry,* 301 U.S. 242, 258 (1937); *Shelton* v. *Tucker,* 364 U.S. 479, 488 (1960); *Grayned* v. *City of Rockford,* 408 U.S., at 116-117. As a corollary, the Court has altered its traditional rules of standing to permit — in the First Amendment area — 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' *Dombrowski* v. *Pfister,* 380 U.S., at 486. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. * * *

"* * *

"* * * Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has

been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. * * *

"* * *

"* * * But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct * * *. To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. * * *"

A law regulating conduct is constitutional unless it is "substantially overbroad," and if the law is not substantially overbroad, then "* * * 'whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.' " *New York State Club Assn.* v. *New York City* (1988), 487 U.S. ___, 101 L. Ed. 2d 1, 16-17, 108 S. Ct. 2225, 2234-2235, citing with approval, *Broadrick, supra,* at 615-616.

In order for Policy No. 622 to be overbroad, the regulation must substantially prohibit protected conduct. Appellee claims that Policy No. 622 invades the parents' right of privacy which includes safeguards to the privacy of the home, just as it protects other privacy rights such as those found in marriage and child rearing.

*State* v. *Orito* (1973), 413 U.S. 139, 142. In essence, the appellee argues that parents have the right to allow their children to drink alcohol outside the school setting and that schools should only interfere when the student becomes disruptive at school because of this drinking.

Whether this parental privacy right is protected by the First Amendment is unclear. In *Griswold* v. *Connecticut* (1965), 381 U.S. 479, 484, a case involving the privacy right of married couples, the court found that zones of privacy are created by certain guaranties created by the Bill of Rights, such as the First Amendment right of association, the Fourth Amendment right against unreasonable search and seizure, and the retention of rights found in the Ninth Amendment. In *Webster* v. *Reproductive Health Services* (1989), 492 U.S. ___, 106 L. Ed. 2d 410, 109 S. Ct. 3040, the court refused to discuss whether the federal Constitution includes an "unenumerated" general right to privacy. Therefore, to reach appellee's argument, it is necessary to assume, for purposes of the argument, that the parents' right in child rearing is constitutionally guaranteed under the First Amendment.

Since the overbreadth doctrine allows a litigant to challenge a statute when there is a violation of another person's First Amendment rights, we will consider the appellee's argument that Policy No. 622 infringes on the privacy right of the student's parents even though the student brings the suit. See *Broadrick, supra,* at 612.

Parents have the authority to furnish beer to their children pursuant to R.C. 4301.69.[7] Policy No. 622 does not

---

[7] Huffer's parents did not furnish Huffer with the beer he consumed while visiting the college, so R.C. 4301.69 does not apply in Huffer's favor.

purport to give the school board or administrators the authority to suspend students for consuming alcohol. School officials are only authorized to suspend a student when the student consumes an alcoholic beverage and then attends school or extracurricular activities. The constitutional and statutory authority given local school boards to manage and control public schools certainly includes the authority to pass reasonable regulations to maintain and enforce discipline in the school setting and such authority in no way infringes upon the parents' privacy right. Parents can continue to govern their child's activities in any way they see fit but such right may not be exercised in the school setting when it conflicts with reasonable rules and regulations promulgated by a local school board.

Accordingly, assuming that a First Amendment right of privacy is involved in this case, and we doubt that there is, Policy No. 622 is not "substantially overbroad." Further, if it is alleged that overbreadth does exist, such alleged overbreadth must be considered through a case-by-case analysis of the fact situations involved. See *New York State Club Assn., supra.* In considering the case at bar, we find that Policy No. 622 is not overbroad, given the facts and circumstances before us.

Based upon the statutes and case law, a school board has the authority to establish a rule which allows school administrators to suspend students for being "under the influence" of alcohol while attending school or a school activity. Policy No. 622 is a reasonable rule which is not overbroad. The school board did not abuse its discretion when it adopted this regulation.

For the foregoing reasons, we find that in adopting and enforcing Policy No. 622, the Circleville City School District Board of Education properly

acted within its authority and we, therefore, reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., WRIGHT and RESNICK, JJ., concur.

SWEENEY, HOLMES and H. BROWN, JJ., dissent.

HOLMES, J., dissenting. For this writer to be dissenting from the position of a school board and the exercise of a board's broad discretionary power is a most unusual position, but this I must do under the facts of this case. My usual stance is one supportive of the sound exercise of the board's administrative authority to operate its school program. In this regard see my most recent comments in dissent in the case of *Phillips* v. *South Range Local School Dist. Bd. of Edn.* (1989), 45 Ohio St. 3d 66, 72-74, 543 N.E. 2d 492, 498-500. Here, however, there has been an abuse of that discretion, not in the promulgation of this particular local rule, but in the application of such rule.

I believe that the school board did exercise its judgment properly in promulgating a rule that reasonably would tend to aid in the control of substance abuse. However, I concur with Justice Brown's statement in his dissent that the facts here do "not lead me to invoke the spectre of 'the current drug and alcohol crisis.' "

I am in agreement with Justice Brown that the school board does not have to meet the same standard as utilized for determining whether one is "under the influence of alcohol" for purposes of the motor vehicle statutory violations. But, as he stated, there should be shown to be some evidence in addition to the odor upon the breath of

the student to establish that the student was under the influence. Here, Mark Huffer returned to his school in order to join the practice session of a sport in which he was actively involved. There was no showing or even any suggestion that Mark was boisterous, rowdy, loud or unruly either before, during, or after this practice session. To the contrary, the only statement supportive of a violation of the board's rule emanated from the assistant coach who had been wrestling with Mark and had smelled alcohol on Mark's breath, and conveyed this information to the coach, who informed the principal.

It appears that Mark wrestled with the wrong opponent in that match. The bottom line, however, is that the principal and the board overreacted in unreasonably applying the rule to the facts of this case. I would affirm the judgment of the court of appeals.

H. BROWN, J., dissenting. I agree with the majority that we should decide the issue presented for review, though the consequence of our ruling will have no effect upon the appellee Huffer or his discipline by the appellant, the Circleville City School District Board of Education.

I have no quarrel with the majority in (1) its citation of authority to support the proposition that a court should not substitute its judgment for a school board's; (2) its determination that board Policy No. 622 is not constitutionally overbroad; and (3) its concern with the current drug and alcohol crisis, and the concomitant need to educate young people to the hazards of substance abuse. Further, I subscribe to the syllabus law.

However, I do not join the majority because these points of agreement are not dispositive of the issue in the case. The facts before us are these. Appellee, a high school senior, with school permission, went to Ohio University for a typical day of college visitations. During that visitation, and with the consent of his parents, he had "a beer or two" with his lunch. At the conclusion of this college visit he returned to participate in wrestling practice as a member of the Circleville wrestling team. This fact pattern does not lead me to invoke the spectre of "the current drug and alcohol crisis."

I dissent because there was *no evidence* to support the board's finding that appellee was "under the influence of * * * [an] alcoholic beverage" while attending a school activity. The only evidence was the smell of beer on his breath coupled with his admission to having one or two beers with lunch. There is *no evidence that any aspect of his behavior indicated the influence of alcohol.* It is not even claimed that appellee's behavior at wrestling practice was inappropriate, unruly or detrimental.

A school board, in enforcing its proper rule that one not participate in school activities while "under the influence," does not have to meet criminal standards such as those found in driving-under-the-influence statutes. However, there should be *some evidence* that the behavior of the student was influenced before the student is punished for being under the influence of alcohol. Since there was no such evidence, I find the suspension meted out by the appellant to be an abuse of discretion. I would affirm the determinations made by the court of appeals and by the trial court in this matter.

SWEENEY and HOLMES, JJ., concur in the foregoing dissenting opinion.