**RUSSELL, Appellee,**

v.

**GALLIA COUNTY LOCAL SCHOOL BOARD, Appellant.**

[Cite as *Russell v. Gallia Cty. Local School Bd.* (1992), 80 Ohio App.3d 797.]

Court of Appeals of Ohio,
Gallia County.

No. 91CA32.

Decided July 28, 1992.

*James M. Casey,* for appellee.

*Ennis, Roberts & Fischer Co., L.P.A.,* and *J. Michael Fischer,* for appellant.

*Per Curiam.*

The Gallia County Local School Board appeals from a judgment of the Gallia County Court of Common Pleas permanently enjoining appellant from terminating busing for secondary school students. The school board raises the following assignments of error:

"I. The trial court's finding of fact that appellant's secondary school students were at risk of death or injury if they drive themselves to school is not supported by any evidence.

"II. The trial court's finding of fact that appellant eliminated the transportation of high school students in order to encourage the passage of an operating levy is not supported by any evidence.

"III. The trial court's finding that an attendance problem would result from the elimination of transportation for high school students is not supported by any evidence.

"IV. The trial court's finding that there is no evidence that Appellant would save approximately $120,000.00 by eliminating the transportation of high school students and only a little money will be saved by discontinuing such transportation, is contrary to the evidence and not supported by any evidence.

"V. The trial court erred in permanently enjoining Appellant from effectuating its lawful decision to eliminate busing for high school students."

As a result of financial difficulties, the Gallia County Local School Board was forced to borrow money from the state loan fund. In May 1990, it borrowed $1,263,000 and in May 1991, it borrowed $1,878,000. In order to obtain these loans, appellant had to present a plan to reduce expenses to the State Department of Education. The plan must reduce annual expenses by one half of the amount of the loan sought. See R.C. 3313.483. Thus, in order to obtain the loan in 1991, appellant had to submit a plan cutting expenses by slightly over $900,000. As part of this plan, appellant intended to eliminate busing for students in grades nine through twelve at an estimated savings of $120,000 per year.

On August 30, 1991, appellee filed a complaint, a motion for a temporary restraining order ("TRO") with a supporting affidavit in the Court of Common Pleas of Gallia County. He sought both a temporary and permanent injunction precluding appellant from terminating busing for high school students. That same day, the court issued the TRO. Appellant filed a motion to vacate the TRO. A hearing was held on September 12, 1991 to determine whether appellant would be permanently enjoined from terminating busing. Following

the hearing, the court filed a journal entry containing the following findings and conclusions which led to this appeal:

"1. The Gallia County Local Board of Education adopted a resolution ending the busing of secondary school students by a vote of 3–2 as part of a plan to reduce expenditures during the 1991–92 school year.

"2. The Board of Education adopted this plan for financial reasons, specifically to obtain a loan [from] the state loan program for schools.

"3. The Gallia County Schools made no provisions for the transportation of the secondary school students of disabled, unemployed or disadvantaged parents.

"4. Secondary students will be required to arrive at school by private vehicles under a risk of death or injury from inexperienced, young drivers.

"5. The Board of Education adopted the ban on busing as part of a policy to reduce services to the students of the district in order to encourage the passage of an operating levy.

"6. Many students and parents in the district are unable to provide their own transportation to school and will likely become an attendance problem.

"7. There is no evidence to support the proposition that $120,000.00 will be saved by not busing secondary students. The only evidence presented suggests that little money will be saved.

"The Court finds as a matter of law that the Board of Education abused its discretion by ignoring the health and safety of the students of the Gallia County Local Schools in ordering busing terminated.

"It is hereby ORDERED that the Gallia County Board of Education be permanently enjoined from terminating busing for secondary students."

We simultaneously address the first four of appellant's assignments of error as they all allege that various of the trial court's factual findings were not supported by any evidence. We note that the failure of the evidence to support an individual factual finding by the trial court does not necessarily mean the court improperly issued the injunction if the court's judgment is supported by other facts in the record. In other words, in order for us to reverse the trial court's judgment, the error must be prejudicial. Civ.R. 61. We now analyze the factual findings appellant contests in order to ultimately determine whether the court's judgment was erroneous.

▮ Appellant first contends that there was no direct evidence to support the finding that the high school students will be forced to travel to/from school in private vehicles risking injury or death at the hands of inexperienced young drivers. Appellee essentially admits there was no such evidence but

contends that the court was entitled to take judicial notice that injuries will result when young people are "behind the wheels." Our review of the record confirms that there was no such direct evidence (that injuries or deaths would result from the termination of busing) introduced below.

Under Evid.R. 201, judicial notice may be taken of an adjudicative fact so long as it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). We hold that the fact in question here does not fall into either of these categories.[1] However, the fact finder may draw reasonable inferences from facts in evidence and, further, may draw an inference in part from those same facts and from common human experience without impermissibly stacking an inference upon an inference. *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees* (1986), 28 Ohio St.3d 13, 28 OBR 77, 502 N.E.2d 204, syllabus. The trial court found a *risk* of injury. Common human experience bears this out. Thus, we find adequate evidence to support the trial court's finding No. 4.

■ Appellant next contends that there is no evidence to support the finding that appellant decided to terminate busing in order to coerce the electorate of Gallia County to pass an operating levy for the schools. Appellee asserts that the court was entitled to take judicial notice that the voters would soon pass upon an operating levy. From this and the remainder of the evidence, he contends the court could infer that busing was eliminated to procure passage of the levy. We find that the existence of an operating levy upon the ballot in the upcoming election was subject to judicial notice. See Evid.R. 201. However, we find no other evidence from which the court could infer that busing was being terminated to coerce passage of the levy. We note that it would defy logic for a school district, forced to borrow $3,000,000 in two years, *not* to have an operating levy on the ballot. To the contrary, the evidence supported the conclusion that appellant's motivation for terminating busing was to cut its expenses in order to qualify for a loan. We find that there is no evidence to support the court's finding No. 5.

Appellant also contends that there was no evidence to support the court's finding that attendance problems would result from the elimination of second-

---

1. The wisdom and propriety of allowing minors to operate a motor vehicle upon Ohio's highways is a determination best left to the legislative body of the government. The General Assembly has determined that a restricted license to operate a motor vehicle may be issued to persons as young as fourteen years of age. R.C. 4507.08. This statute applies in Gallia County as it does throughout the state and it is not for the judicial branch of the government to question the wisdom of this legislation.

ary busing. It points out that appellee testified that neither he nor his wife is employed, their oldest daughter is a high school student and has her driver's license, and the family has three cars. This, appellant contends, belies the finding of resultant attendance problems.

■ We disagree with appellant's assertion that there was no evidence to support the finding of attendance problems resulting from the busing cut. The parties stipulated that if the proposed cut took place, forty-seven to fifty students would be unable to attend Buckeye Hills High School. There were also stipulations regarding hardships that would result because of parents' financial conditions, work schedules and the distance of their residences from school.[2] From these stipulations, the court could reasonably infer that attendance problems would result from the termination of busing. Accordingly, appellant has not carried its burden of demonstrating that the court erred in making such a finding.

The trial court found no evidence to support appellant's contention that the elimination of busing grades nine through twelve would save $120,000 per year. Further, the court found that the "evidence * * * suggests that little money will be saved." Appellant asserts that not only is there no evidence to support these findings of fact, but further that such findings are in conflict with the evidence that was presented.

■ Appellee called John Fellure, a member of the board who voted against the elimination of busing. He testified that the elimination of secondary busing was to create a savings of $140,000 to $150,000. He also testified that approximately twelve bus drivers could be eliminated. He felt it was probable that the same number of annual miles would be driven, but that it would be done with fewer buses. Finally, he testified that the board was self-insured for unemployment compensation and that benefits would have to be paid to the drivers that were laid off.

Max Haffelt also testified during appellee's case. He is the Director of Business Affairs for the Gallia County Local School Board and is responsible for student transportation. He indicated that twelve bus routes could be eliminated by the cut in busing. He also said that the annual bus mileage would be reduced by almost twenty-five percent.

The board presented its treasurer, who testified that a spending reduction plan was required in order to receive the loans from the state loan fund. A copy of the plan was introduced, which indicated a spending reduction of

2. Some parents would be forced to travel as much as eighty-eight miles per day in order to take their children to and from school.

$120,000 would be realized as a result of the elimination of busing for grades nine through twelve. He indicated that busing was to be terminated for those grades only because there were no other cuts that could be made. School superintendent Robert Lanning echoed that testimony.

In reviewing the foregoing evidence, the court's seventh finding that there is *no* evidence to support the $120,000 expense reduction is totally unfounded.

 We turn now to the ultimate question of whether the trial court properly concluded that the board's decision was arbitrary. In order to do so, we find it necessary to discuss the role of courts when reviewing an action taken by a board of education. In *Brannon v. Bd. of Edn.* (1919), 99 Ohio St. 369, 124 N.E. 235, the Supreme Court held at paragraphs two and three of the syllabus:

"A court has no authority to control the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board, upon any question it is authorized by law to determine.

"A court will not restrain a board of education from carrying into effect its determination of any question within its discretion, except for an abuse of discretion, or for fraud or collusion on the part of such board in the exercise of its statutory authority." See, also, *In re Appeal of Suspension of Huffer from Circleville High School* (1989), 47 Ohio St.3d 12, 14–15, 546 N.E.2d 1308, 1310–1312; *Rohrbaugh v. Elida Local Bd. of Edn.* (1990), 63 Ohio App.3d 685, 687–688, 579 N.E.2d 782, 782–784; Buchter, Scriven & Sheeran, Ohio School Law (1991) 99–100, Section 5.06(C).

The foregoing principles are also stated in 82 Ohio Jurisprudence 3d (1988) 284–286, Schools, Universities and Colleges, Section 116:

"Since boards of education have only such authority as is conferred by law, action taken outside of and against the plain provisions of the law is absolutely void. But boards of education have, by statute, been given a broad discretion with regard to school matters and policy and the protection of the public school system, and a court has no authority to control the discretion vested by the statutes in a board of education or to substitute its judgment for that of the board upon any question it is authorized by law to determine. Since the control and management of the schools of the state is given to the boards of education by statute, these boards cannot be interfered with, coerced, or restrained in any manner by a court with regard to carrying into effect their determination of any question within their legitimate jurisdiction except where the boards have acted arbitrarily or abused their discretion, or where there is fraud, bad faith, or collusion on the part of such boards in the

exercise of their statutory authority. In other words, the grant of discretionary power by the legislature to a board of education cannot be circumscribed by the courts, where the exercise of such power is reasonable, in good faith, and not clearly shown to be an abuse of discretion or in violation of the state or federal constitution." (Footnotes omitted.)

■ Accordingly, the court below was faced with the issue of whether the termination of busing for secondary students was illegal, an abuse of discretion, or a product of fraud, bad faith or collusion.[3] The court found the proposed action was an abuse of discretion and granted the injunction appellee sought. On appeal, we independently review the actions of the board to determine if they amounted to an abuse of discretion. See, generally, *In re Huffer* and *Brannon, supra.*

An abuse of discretion connotes more than an error of law or judgment; it implies an attitude that is unreasonable, arbitrary or unconscionable. *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624.

■ The record indicates the unquestioned need of the board to borrow money in order to operate. To do so, the board must reduce operating expenses by approximately one half of the amount borrowed. The board presented a rational explanation for its decision and presented evidence to substantiate its estimated savings. The record indicates that the board looked at another alternative, *i.e.*, consolidation, and rejected it. Notwithstanding the fact that there was contradictory testimony presented as to the total amount of savings that would actually be realized, and in light of the fact that the legislature has provided that the busing of high school students is discretionary, see R.C. 3327.01, we cannot say that the board's decision to eliminate it under these conditions was an abuse of discretion. Further, we find that as a matter of law, the trial court's factual findings that were supported by competent, credible evidence were an insufficient basis to find that the board abused its discretion. In short, the trial court impermissibly substituted its

---

**3.** It is not *per se* "illegal" for a board of education to eliminate busing of secondary students. In part, R.C. 3327.01 provides:

"In all city, exempted village, and local school districts the board *may* provide transportation for resident school pupils in grades nine through twelve to and from the high school to which they are assigned by the board of education of the district of residence or to and from the non-public high school which they attend for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code." (Emphasis added.)

Thus, the provision of transportation to students in grades nine through twelve is at the discretion of the board.

To the extent that the court's finding No. 5 purports to establish bad faith, we have found it to be totally unsupported by the evidence, both direct and circumstantial.

judgment for that of the board in violation of the mandate of *Brannon* and *In re Huffer, supra.* Accordingly, the judgment of the trial court is reversed with orders to enter judgment in favor of appellant.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, P.J., HARSHA and PETER B. ABELE, JJ., concur.