[Cite as *State v. Yontz*, 2021-Ohio-382.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 20CA000010 |
| VERNON L. YONTZ, II. | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Criminal appeal from the Guernsey County
Court of Common Pleas, Case No. 17-304

JUDGMENT:      Dismissed

DATE OF JUDGMENT ENTRY:      February 9, 2021

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOEL M. BLUE      CARLY M. EDELSTEIN
Prosecuting Attorney      Assistant State Public Defender
627 East Wheeling Avenue      250 East Broad Street, Ste. 1400
Cambridge, OH 44735      Columbus, OH 43215

*Gwin, P.J.*

{¶1}    Defendant-appellant Vernon L. Yontz, II ("Yontz") appeals from the April 27, 2020 judgment entry of the Guernsey County Court of Common Pleas denying Yontz's Motion to Modify Terms of Intervention in Lieu of Conviction Supervision.

*Facts and Procedural History*

{¶2}    On August 29, 2017, Yontz was indicted for one count of aggravated possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11(C)(1)(a). Yontz was scheduled to be arraigned on September 14, 2017; however Yontz could not be found. Arraignment on September 28, 2017 again resulted in a failure to find Yontz and serve him a copy of the Indictment. On October 3, 2017, a warrant was issued for Yontz's arrest. [Docket Entry Number 8].  Yontz was finally arraigned on May 6, 2019. [Docket Entry No. 11].

{¶3}    On June 5, 2019, Yontz filed a Request for Intervention in Lieu of Conviction. [Docket Entry No. 24]. The trial court scheduled a hearing on Yontz's motion for July 24, 2019[1]. [Docket Entry Number 26]. Yontz executed a written plea of guilty form on July 24, 2019. [Docket Entry Number 27]. Yontz pled guilty in open court on July 24, 2019[2]. [Docket Entry Number 27]. Sentencing was deferred until September 23, 2019.

{¶4}    By Judgment Entry filed September 23, 2019, the trial court noted that Yontz "has been evaluated by the Presentence Investigator of the Court's Probation Department and is *prima facie* eligible for Intervention in lieu of conviction[3]."  The court further noted that Yontz had an assessment and treatment plan from Noble Behavioral Health Choices. [Docket Entry Number 29]. The trial court found Yontz to be appropriate for Intervention in

---

[1] No transcript of this hearing was requested or filed in the record before this Court.
[2] No transcript of this hearing was requested or filed in the record before this Court
[3] No transcript of this hearing was requested or filed in the record before this Court

Lieu of Conviction. Yontz was placed on at least one year, which may be extended to three years of probation- like supervision under any terms and conditions the Adult Probation Department deems appropriate.

{¶5} On September 23, 2019, Yontz signed a "Policy on Prescription Medications" with the Guernsey County Adult Probation Department which included the following notification, "Suboxone will not be an approved medication. If you are currently prescribed Suboxone, you must see your physician to obtain a safe titration plan. You must be weaned off within 60 to 90 days." [Docket Number 38, *Motion to Modify Terms of Intervention in Lieu of Conviction*, filed March 23, 2020 at Exhibit C].

{¶6} On March 3, 2020 the trial court issued a capias for Yontz's arrest upon having been notified by the probation department that Yontz's whereabouts were unknown in violation of his Intervention in Lieu of Conviction conditions. [Docket Entry Number 33]. Yontz turned himself in on March 3, 2020. By Judgment Entry filed March 17, 2020, the trial court cancelled the capias. [Docket Entry Number 37].

{¶7} On March 23, 2020, Yontz filed a Motion to Modify Terms of Intervention in Lieu of Conviction to include use of Suboxone in treatment arguing that the requirement that Yontz was required to taper off Suboxone violated the Americans with Disabilities Act. [Docket Entry Number 38]. The state filed a response to the motion on April 21, 2020. [Docket Entry Number 42]. By Judgment Entry filed April 27, 2020 the trial court denied Yontz's Motion to Modify Terms of Intervention in Lieu of Conviction. [Docket Entry Number 43].

*Assignments of Error*

{¶8} Yontz raises two Assignments of Error,

{¶9}  "I. THE GUERNSEY COUNTY PROBATION DEPARTMENT'S POLICY AS APPLIED TO VERNON YONTZ VIOLATES TITLE II OF THE AMERICANS WITH DISABILITIES ACT. 42 U.S.C. §§ 12101 ET SEQ.

{¶10}  "II. THE GUERNSEY COUNTY PROBATION DEPARTMENT'S POLICY AS APPLIED TO VERNON YONTZ VIOLATES THE EQUAL PROTECTION CLAUSES OF BOTH THE UNITED STATES AND OHIO CONSTITUTIONS. UNITED STATES CONSTITUTION, FOURTEENTH AMENDMENT; OHIO CONSTITUTION, ARTICLE I, SECTION 2."

**Intervention in Lieu of Conviction ["ILC"]**

{¶11}  In *State v. Massien,* the Ohio State Supreme Court made the following observations,

ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage was a factor leading to the offense.  R.C. 2951.041(A)(1). If, after a hearing, the trial court determines that an offender is eligible for ILC, then it shall accept the offender's guilty plea, place the offender under the general control and supervision of the appropriate probation or other qualified agency, and establish an intervention plan for the offender.  R.C. 2951.041(C) and (D). The intervention plan shall last at least one year, during which the offender is ordered to abstain from alcohol and illegal drug use, to participate in treatment and recovery-support services, and to submit to regular random testing for drug and alcohol use. R.C. 2951.041(D). If the offender successfully completes the intervention plan, the trial court shall dismiss proceedings against the offender without an

adjudication of guilt and may order the sealing of records related to the offense. R.C. 2951.041(E). If the offender fails to comply with any term or condition imposed as part of the intervention plan, the court shall enter a finding of guilt and impose the appropriate sanction. R.C. 2951.041(F).

"In enacting R.C. 2951.041, the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime." *State v. Shoaf* (2000), 140 Ohio App.3d 75, 77, 746 N.E.2d 674 (referring to a previous, but similar, version of R.C. 2951.041). R.C. 2951.041 is not limited to offenders charged with drug offenses. Rather, any offender charged with any qualifying offense may be eligible for ILC so long as the trial court has "reason to believe that drug or alcohol usage by the offender was a factor leading to the offender's criminal behavior." R.C. 2951.041(A)(1). ILC is not designed as punishment, but rather as an opportunity for first-time offenders to receive help for their dependence without the ramifications of a felony conviction. *State v. Ingram*, Cuyahoga App. No. 84925, 2005-Ohio-1967, 2005 WL 977820, ¶ 13.

R.C. 2951.041(B) lists the criteria that a criminal defendant must meet to be eligible for ILC. "If an offender satisfies all of the statutory eligibility requirements for intervention, the trial court has discretion to determine whether a particular offender is a good candidate for intervention." *State v. Geraci*, Franklin App. No. 04AP–26, 2004-Ohio-6128, 2004 WL 2616660, ¶ 5

125 Ohio St.3d 204, 2010-Ohio-1864, 926 N.E.2d 1282, ¶9 - ¶11.

{¶12} Courts have consistently noted that the opportunity to participate in ILC is not a right, but a privilege. Therefore, R.C. 2951.041 does not create a legal right to intervention in lieu of conviction. *State v. Birch*, 12th Dist. Butler No. CA2010–10–25602, 2012–Ohio–543, ¶ 37; State *v. Dempsey*, 8th Dist. Cuyahoga No. 82154, 2003–Ohio–2579, ¶ 9; *State v. Zepeda,* 6th Dist. Wood No. WD-13-003, 2014-Ohio-1311, ¶12; *State v. Boros,* 8th Dist. Cuyahoga Nos. 105173 & 105174, 2017-Ohio-7405, ¶11; *State v. Belliman,* 9th Dist. Lorain No. 15CA010525, ¶10.

{¶13} In the case at bar, Yontz was accepted into ILC and entered a treatment program with Noble Behavioral Health Choices, Inc. ["Noble"]. Zanesville Treatment Center was listed as Yontz's Suboxone provider. *See, Motion to Modify Terms of Intervention in Lieu of Conviction*, filed March 23, 2020 at Exhibit B. Yontz was scheduled to return to Noble on September 4, 2019 to begin relapse prevention. Id. The record from Zanesville Treatment Center begins on April 16, 2019. This record shows that Yontz was receiving Suboxone during Noble's recommendation period and continued through the end of 2019. Yontz was receiving 16 milligrams of Suboxone per day from April 16, 2019 through November 8, 2019. *See, Motion to Modify Terms of Intervention in Lieu of Conviction*, filed March 23, 2020 at Exhibit B. On September 23, 2019, Yontz signed a "Policy on Prescription Medications" with the Guernsey County Adult Probation Department which included the following notification, "Suboxone will not be an approved medication. If you are currently prescribed Suboxone, you must see your physician to obtain a safe titration plan. You must be weaned off within 60 to 90 days." [Docket Number 38, *Motion to Modify Terms of Intervention in Lieu of Conviction*, filed March 23, 2020 at Exhibit C]. On December 20, 2019, Yontz received 4 milligrams of Suboxone. On December 21 and December 22, 2019 Yontz received 2 milligrams of Suboxone.

**{¶14}** There is nothing in the record before this Court showing Yontz has received Suboxone after December 22, 2019. There is no report from Noble concerning the medication withdrawal plan (also called a taper) signed by Yontz and the probation department on September 23, 2019. There is no report from either Noble or the Zanesville Treatment Center after August 20, 2019.

## The "Mootness Doctrine".

**{¶15}** "Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions." *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920), *quoting California v. San Pablo & Tulare R. Co.,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893); *Accord, North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 92, 30 L.Ed.2d 244(1971). Because mootness is a jurisdictional question, the question of mootness is one that must be addressed even if the parties do not raise it. *North Carolina v. Rice*, 404 U.S. at 246, 92 S.Ct. 92, 30 L.Ed.2d 244.

**{¶16}** Ohio courts have long exercised judicial restraint in cases that are not actual controversies. *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371, 372(1970). No actual controversy exists where a case has been rendered moot by an outside event. "It is not the duty of the court to answer most questions, and when, pending proceedings in error in this court, an event occurs without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition in error." *Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21(1910), syllabus; Tschantz *v. Ferguson*, 57 Ohio St.3d 131, 133, 566 N.E.2d 655(1991).

**{¶17}** In *Bradley v. Ohio Dept. of Job and Family Services* our brethren from the Tenth Appellate District observed,

"The doctrine of mootness is rooted in the 'case' or 'controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint." *James A. Keller, Inc. v. Flaherty* (1991), 74 Ohio App.3d 788, 791, 600 N.E.2d 736. "While Ohio has no constitutional counterpart to Section 2, Article III, the courts of Ohio have long recognized that a court cannot entertain jurisdiction over a moot question." Id. "It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice upon potential controversies."  *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 257 N.E.2d 371. In other words, an issue is moot when it has no practical significance, being instead merely hypothetical or academic.

10th Dist. Franklin No. 10AP–567, 2011–Ohio–1388, ¶ 11; *Accord, Boncek v. Stewart*, 9th Dist. Summit No. 21054, 2002–Ohio–5778, ¶ 10. Although the mootness doctrine has exceptions, none apply in the case at bar. *See, e.g., In re Appeal of Suspension of Huffer from Circleville High School*, 47 Ohio St.3d 12, 546 N.E.2d 1308 (1989), paragraph one of the syllabus (noting the two exceptions to the mootness doctrine are when "the issues are capable of repetition, yet evading review" or the case "involves a matter of public or great general interest").

{¶18}   A court may take judicial notice of mootness. "In fact, 'an event that causes a case to be moot may be proved by extrinsic evidence outside the record.' *Pewitt v. Lorain*

*Correctional Inst.* (1992), 64 Ohio St.3d 470, 472, 1992–Ohio–91, 597 N.E.2d 92, 94."
*State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228, 2000–Ohio–141, 729 N.E.2d
1181(2000). *Accord, Miner v. Witt*, 82 Ohio St. 237, 239, 92 N.E.2d 21(1910).

**{¶19}** In the case at bar, no evidence was presented in the record that Yontz failed
to comply with the September 23, 2019 directive from the probation department concerning
tapering off of Suboxone. There is no evidence that Yontz has used Suboxone after
December, 2019. There is no report from Noble concerning the medication withdrawal plan
(also called a taper) signed by Yontz and the probation department on September 23,
2019. There is no report from either Noble or the Zanesville Treatment Center after August
20, 2019. Accordingly, there is no evidence that the trial court needs to modify Yontz's ILC
to include the use of Suboxone.

**{¶20}** As it appears that Yontz has complied with the requirements concerning
Suboxone we find the issue of whether the trial court's policy as applied to Yontz violates
anti-discrimination and equal protection laws is moot. There is no remedy or relief this
Court can provide.

{¶21} Consistent with the foregoing discussion, it is the order of this court that the instant appeal is hereby dismissed as moot.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur