[Cite as *Paige v. Ohio High School Athletic Assn.*, 2013-Ohio-4713.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

ALEXXUS M. PAIGE,                   :        APPEAL NO. C-130024
                                             TRIAL NO.  A-1209427
    Plaintiff-Appellee,        :

  vs.                               :        *O P I N I O N.*

OHIO HIGH SCHOOL ATHLETIC           :
ASSOCIATION,

    Defendant-Appellant.       :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Appeal Dismissed and Injunction Vacated

Date of Judgment Entry on Appeal:  October 25, 2013


*Chris Wiest ALL, PLLC, James Bogen* and *Christopher Wiest,* for Plaintiff-Appellee,

*Fruend Freeze & Arnold, Thomas B. Bruns, Gordon D. Arnold* and *Lucinda Shirooni*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant the Ohio High School Athletic Association ("OHSAA") appeals from a preliminary injunction issued in favor of plaintiff-appellee, high-school-athlete Alexxus Paige. The injunction restrained the OHSAA from enforcing OHSAA Bylaw 4-7-2, under which Paige had been declared ineligible to participate in interscholastic athletics at Winton Woods High School during her senior year. It also restrained the OHSAA from taking any adverse action against Paige or Winton Woods for her participation in athletics. Because we conclude that no actual controversy currently exists between the OHSAA and Paige, we grant her motion to dismiss the appeal as moot. We also vacate that portion of the trial court's preliminary injunction that prohibited the OHSAA from taking any adverse action against Winton Woods because Winton Woods was never a party to the lawsuit, and the trial court, therefore, lacked the authority to issue the preliminary injunction regarding Winton Woods.

{¶2} On June 1, 2012, Paige and her mother, Vivian Watkins, moved from the family's home in the Cincinnati Public School District to an apartment in the Winton Woods School District. As a result of the move, Paige, who had attended Withrow High School for her freshman, sophomore, and junior years, enrolled at Winton Woods High School for her senior year. Both schools are members of the OHSAA.

{¶3} The OHSAA is an association of public and private high schools and junior high schools in the state of Ohio that regulates, supervises, and administers interscholastic athletic competition among its member schools. As members of the OHSAA for the 2012-2013 school year, Withrow and Winton Woods have adopted and agreed to follow the OHSAA bylaws and regulations.

**{¶4}** OHSAA Bylaw 4-7-2 provides that a student who transfers from one school to another after the fifth day of her ninth grade year cannot play sports at the new school for one year from the date of enrollment unless one of the 11 exceptions applies. Exception One provides that

> [i]f, as a result of a bona fide legal change of residence made by BOTH PARENTS, the student is compelled to transfer from one public school district to another public school district, the Commissioner's Office may restore athletic eligibility at the new school provided the Commissioner's Office is satisfied that the transfer was not athletically motivated. The requirement that "both parents" make the move may be waived by the Commissioner's Office if the marriage of the parents has been or is in the process of being terminated or if the parents were never married. An Affidavit of Bona Fide Residence in the form requested by the Commissioner's Office, must be submitted along with any request for the application of this exception.

**{¶5}** Following Paige's transfer to Winton Woods, her mother submitted an affidavit for a bona fide legal change of residence to the OHSAA in accordance with Exception One to OHSAA Bylaw 4-7-2. Shortly thereafter, OHSAA Associate Commissioner Dr. Deborah Moore notified Winton Woods by letter that the OHSAA had determined that Paige had not met the exception because her transfer had not been compelled by a change of residence, but had been motivated by a desire to play basketball at Winton Woods. Thus, the OHSAA concluded that under Bylaw 4-7-2, Paige was ineligible to participate in athletics at Winton Woods during her senior year. Paige's mother appealed the commissioner's determination to the OHSAA Appeals Panel. Following a hearing, the Panel affirmed the commissioner's ruling.

3

{¶6}   On December 5, 2012, Paige filed suit in the common pleas court seeking a preliminary injunction to enjoin the OHSAA from enforcing transfer Bylaw 4-7-2 against her.  The trial court held a hearing on December 7, 2012, and granted her request.  It restrained the OHSAA from enforcing transfer Bylaw 4-7-2 against Paige and from taking any adverse action against Paige or nonparty Winton Woods based upon the OHSAA's determination that Paige was ineligible to participate in athletics during her senior year at Winton Woods.  Paige filed an amended complaint seeking that relief on December 17, 2012. The record does not reflect service of the amended complaint upon Winton Woods.  Thus, Winton Woods was never made a party to this action.

{¶7}   In this appeal, the OHSAA raises five assignments of error.  But before we can reach the merits of its appeal, we must determine if its appeal is moot.  Paige has filed a motion to dismiss, arguing that the OHSAA's appeal is moot.  "The doctrine of mootness is rooted both in the 'case' or 'controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint."  *See James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791, 600 N.E.2d 736 (10th Dist.1991) citing 1 Rotunda, Novak & Young, *Treatise on Constitutional Law:  Substance and Procedure*, 97, Section 2.13 (1986).  "While Ohio has no constitutional counterpart to Section 2, Article III, Ohio courts have long recognized that a court cannot entertain jurisdiction over a moot controversy."  *Id.*

{¶8}   A case becomes moot if at any stage there ceases to be an actual controversy between the parties. *See Miner v. Witt*, 82 Ohio St. 237, 92 N.E. 21 (1910); *see also Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970) ("[it] has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature

4

declarations or advice upon potential controversies."). "An actual controversy is a genuine dispute between adverse parties." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 748, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10.

{¶9} Ohio courts have held that when an individual graduates from high school or no longer has an interest in participating in interscholastic athletic activity, an action to participate in such activity is deemed moot. *See Dankoff v. Ohio High School Athletic Assn.*, 9th Dist. No. 24076, 2008-Ohio-4559, ¶ 4; *Ulliman v. Ohio High School Athletic Assn.*, 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763, ¶ 28 (2d Dist.). Here, it is undisputed that Paige has graduated from Winton Woods High School and will play no more high school basketball games. Thus, the power of the OHSAA to adversely affect her rights to play interscholastic athletics has ended. Consequently, there is no live controversy regarding the transfer rule or her participation in athletics at Winton Woods. As a result, we agree with Paige that the portion of the trial court's injunction which permitted her to participate in interscholastic athletics at Winton Woods is moot.

{¶10} The OHSAA argues, however, that the case as a whole is not moot because the trial court's injunction also prohibited the OHSAA from taking any adverse action against Paige or Winton Woods for permitting Paige's participation in athletics. According to OHSAA Bylaw 11-1-4, the OHSAA may sanction member schools and their athletes in the event an ineligible student athlete participates in violation of the OHSAA eligibility rules, but in accordance with an injunction or restraining order which is later vacated, stayed, reversed, or finally determined to have been unjustified. Those sanctions include: striking individual and team records and performances, forfeiting victories, returning trophies and rewards, and returning certain funding.

{¶11} The OHSAA argues that a live controversy exists because it has an interest in having the injunction invalidated and set aside, so that it can exercise its possible discretion to impose the penalties under Bylaw 11-1-4 upon Winton Woods and Paige. It further argues that Paige has an interest in preventing the OHSAA from erasing her own team's victories and performances. Paige, however, has no such interest as noted in the motion to dismiss this appeal. The OHSAA relies upon an opinion from the Second Appellate District, *Ulliman,* 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763, to support its position. But we do not find the analysis in *Ulliman* to be persuasive because the Second Appellate District engaged in no meaningful analysis of whether the OHSAA, the school, or the student had a legally cognizable interest in the outcome of the appeal.

{¶12} Notably in this case, Winton Woods was never made a party in the trial court, nor was it made a party to this appeal. Further, Winton Woods has never moved to intervene in this case, and has asserted no interest in this matter. Thus, there is no justiciable controversy or pending action between the OHSAA and Winton Woods concerning the validity or the enforcement of the trial court's preliminary injunction. Thus, we have no authority to adjudicate any potential dispute between the OHSAA and Winton Woods over the sanctions outlined in Bylaw 11-1-4. As a result, any actions the OHSAA may take against Winton Woods in the future are irrelevant in determining whether a live controversy currently exists between Paige and the OHSAA. *See Johnson v. Florida High School Activities Assn., Inc.*, 102 F.3d 1172, 1173 (11th Cir.1997); *Jordan v. Indiana High School Athletic Assn.,* 16 F.3d 785, 787-88 (7th Cir.1994); *McPherson v. Michigan High School Athletic Assn.*, 119 F.3d 453, 458, 466 (6th Cir.1997) (Nelson-Moore, J., dissenting).

{¶13} Furthermore, no live controversy exists now between Paige and the OHSAA. Paige's attorney stated during oral argument that Paige had no further interest in continuing the injunction and argued that the issues before this court are moot. Moreover, there is no indication in the record or the parties' briefs that Paige set any records or won any awards while participating under the injunction. *See Crane v. Indiana High School Athletic Assn.*, 975 F.2d 1315, 1318 (7th Cir.1992) (student's claims were not moot where the student could lose individual awards). Likewise, the record does not reveal whether there are any team records that could be stricken.

{¶14} Thus, the only remaining penalties that Paige could conceivably have an interest in avoiding are the erasure of her individual performances and the forfeiture of any team victories. There is some authority that when a student athlete represents to the trial court that he or she would be personally adversely affected if the school were penalized, an appeal is not moot despite the absence of the school as a party to the appeal. *See McPherson*, 119 F.3d at 458-459; *Sandison v. Michigan High School Athletic Assn.*, 64 F.3d 1026 (6th Cir.1995); *Pottgen v. Missouri State High School Activities Assn.*, 40 F.3d 926, 928 (8th Cir.1994). However, there is also authority that the possibility of retroactive penalties does not prevent an appeal from being moot if the only possible penalty is forfeiture of team victories and the school, like OHSAA member Winton Woods in this case, is not a party to the appeal. *See Johnson*, 102 F.3d at 1173; *see also Jordan*, 16 F.3d at 788-89.

{¶15} Here, given the uncontested statements of Paige's attorney that she will not be personally adversely affected if Winton Woods were to be penalized, and the fact that application of Bylaw 11-1-4 would have a meaningful impact only on Winton Woods, a nonparty, who as a member of the OHSAA has agreed to the OHSAA rules, we cannot conclude that there is a tangible and substantial controversy between the parties

with respect to the portion of the injunction enjoining the OHSAA from taking any action against Paige and Winton Woods. Moreover, it is not even clear if there will be a future controversy between the parties. The imposition of sanctions under Bylaw 11-1-4 is discretionary and thus speculative at best at this time. The OHSAA may choose, in its discretion not to sanction Winton Woods, or Paige and/or Winton Woods may choose not to protest the sanctions that are subsequently imposed. *See McPherson*, 119 F.3d at 45 (Nelson-Moore, J., dissenting). We, therefore, conclude that the OHSAA's appeal as a whole is moot. *See Johnson*, 102 F.3d at 1173; *see also Jordan*, 16 F.3d at 788-89.

{**¶16**} The OHSAA alternatively argues that even if this case technically meets the standard for mootness, we should not dismiss the case as moot because an exception to the mootness doctrine exists for cases that are capable of repetition, yet evade judicial review. But to meet this exception, the OHSAA must show that both of the following conditions apply: (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and (2) there is "a reasonable expectation that the same complaining party will be subjected to the same action again." *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231, 729 N.E.2d 1182 (2000).

{**¶17**} We agree with the OHSAA that it has met the first prong. Here, the basketball season ended during the pendency of OHSAA's appeal. But because Paige has graduated, there is no reason to suspect that either she or her parent, the parties actually involved in this case, will again be subjected to the actions of the OHSAA. Thus, this is not an issue that is capable of repetition yet evading review. *See Dankoff v. OHSAA*, 9th Dist. Summit No. 24076, 2008-Ohio-4559, ¶ 4; *see also Johnson*, 102 F.3d at 1173. Nor do we find the resolution of the issues in the OHSAA's appeal to raise a debatable constitutional question or to be a matter of

8

"great public importance." *See Schwabb v. Lattimore*, 166 Ohio App.3d 12, 2006-Ohio-1372, 848 N.E.2d 912, ¶ 12 (1st Dist.).

{¶18} Because there is no present controversy between Paige and the OHSAA, we grant her motion to dismiss the appeal as moot. And because Winton Woods is not even a nominal, much less an active party to this lawsuit, the trial court lacked the authority to issue the preliminary injunction regarding Winton Woods without prior notice and hearing from the school district. We, therefore, vacate that portion of the preliminary injunction that prohibits the OHSAA from taking any action against Winton Woods.

{¶19} We recognize that our resolution of the OHSAA's appeal conflicts with the opinion of the Second District Court of Appeals in *Ulliman v. Ohio High School Athletic Assn.*, 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763 (2d Dist.). We, therefore, certify to the Supreme Court of Ohio, pursuant to Section 3(B)(4), Article IV, Ohio Constitution, the following issue for review and final determination: Where an injunction is issued at the request of a student, which permits the student to participate in interscholastic athletics despite the Ohio High School Athletic Association's determination of ineligibility, under its Bylaw 4-7-2, Exception One, and prohibits the OHSAA from invoking its right to sanction a member school, does a live controversy still exist when: (1) the student is no longer participating in high school athletics; (2) the member school where the student participated is not a party to the appeal; and (3) the student is no longer interested in pursuing the matter on appeal?

Judgment accordingly.

**HENDON, P.J,** concurs.
**CUNNINGHAM, J.,** dissents.

**CUNNINGHAM, J.,** dissenting.

9

{¶20} I respectfully dissent. I cannot agree with the majority that the OHSAA's appeal is moot. As a result, I would reach the merits of the OHSAA's appeal. Because Paige was afforded notice of the OHSAA's eligibility determination and an opportunity to be heard before its Appeals Panel in accordance with the OHSAA's constitution and bylaws and because the OHSAA Panel's decision denying her eligibility was not the result of mistake, fraud, collusion, or arbitrariness, I would reverse the trial court's ruling and vacate the preliminary injunction.

### OHSAA and Trial Court Proceedings

{¶21} Alexxus Paige attended Withrow High School and played basketball there from the ninth through the eleventh grades. On June 1, 2012, Paige moved with her mother, Vivian Watkins, from the family's home in the Cincinnati Public School District to an apartment in the Winton Woods School District. As a result of the move, Paige enrolled at Winton Woods High School for her senior year. Both Withrow and Winton Woods are members of the OHSAA.

{¶22} The OHSAA is a nonprofit, voluntary, unincorporated association of public and private high schools and middle schools in the state of Ohio that regulates, supervises, and administers interscholastic athletic competition among its member schools. As members of the OHSAA for the 2012-2013 school year, Withrow and Winton Woods have adopted a constitution and bylaws by which they have agreed to conduct their interscholastic sports programs.

{¶23} Section 4-7-2 of the OHSAA Bylaws states that a student who transfers from one school to another after the fifth day of her ninth grade year cannot play sports at the new school for one year from the date of enrollment unless one of the eleven exceptions applies. Exception One states as follows:

10

[i]f, as a result of a bona fide legal change of residence made by BOTH PARENTS, the student is compelled to transfer from one public school district to another public school district, the Commissioner's Office may restore athletic eligibility at the new school provided the Commissioner's Office is satisfied that the transfer was not athletically motivated. The requirement that "both parents" make the move may be waived by the Commissioner's Office if the marriage of the parents has been or is in the process of being terminated or if the parents were never married. An Affidavit of Bona Fide Residence in the form requested by the Commissioner's Office, must be submitted along with any request for the application of this exception.

{¶24} Upon Paige's transfer to Winton Woods, the athletic director at Winton Woods and Watkins submitted an affidavit for a bona fide legal change of residence to the OHSAA in accordance with Exception One. The OHSAA sent an email to Darren Braddix, the Athletic Director at Withrow High School, about Paige's request for an exception to the transfer prohibition. Braddix, responded as follows:

I am sure that this move was athletically motivated. There was a problem during our last tournament basketball game where she was benched for the remaining 3 qtrs and we proceeded to lose. Alexxus and the coach got into it. Her parents and the coach also got into it. From that point on she declared that she was transferring to Winton Woods and couldn't wait to play us. That is all we heard 3-4 qtr last year. Winton Woods is where most of her AAU [Amateur Athletic Union] Basketball teammates play as well

11

as one of her AAU Coaches. We wish her well but [I] am sure Alexxus would still be here if it weren't for Basketball.

{¶25} Shortly thereafter, OHSAA Associate Commissioner Deborah Moore notified Winton Woods by letter that the OHSAA had determined that Paige's decision to transfer schools had not been compelled by a change of residence, but had been motivated by a desire to play basketball at Winton Woods. Thus, the OHSAA had concluded that under Bylaw 4-7-2, Paige was ineligible to participate in athletics at Winton Woods during her senior year. Paige's mother appealed the commissioner's determination to the OHSAA Appeals Panel.

{¶26} The OHSAA Appeals Panel was established in June 2012 after a vote by OHSAA member schools authorizing the board of directors to establish an appeals panel with exclusive jurisdiction to hear eligibility appeals. The Appeals Panel is comprised of three superintendents from member schools in different parts of Ohio. The rules of conduct for eligibility appeals are set forth in the 2012-2013 OHSAA Manual under the heading "Frequently Asked Questions."

{¶27} The rules provide that the appellant or a representative of his choosing shall have the opportunity to present evidence through witnesses or documentary evidence, supporting the position as to why the appeal should be granted. The rules further state that the commissioner's office does not have subpoena power. Therefore, it is incumbent upon the appealing party to make all arrangements necessary for the attendance of any/all witnesses it desires to support its appeal. The commissioner, however, has the authority to compel the attendance of school personnel at this hearing, and may exercise that authority if it is perceived that their attendance is necessary to assist in understanding facts necessary for the disposition of the appeal.

{¶28} The rules additionally provide that the commissioner's office will be represented by members of the OHSAA staff who shall be present at and throughout the appeal, as well as the OHSAA legal counsel; that OHSAA staff and counsel will defend the decision from which the appeal is taken, and one should expect a vigorous defense of the same; and that a great deal of deference shall be given to the decision of the commissioner's office. Notwithstanding this deference, however, an appellant shall be permitted to introduce any new evidence he or she believes is relevant to their case. Likewise, the commissioner's office may introduce additional evidence in support of its decision. The rules expressly state that the burden of proof rests with the appealing party.

{¶29} At a hearing before the panel regarding Paige's eligibility, Assistant Commissioner Moore acknowledged that Watkins had made a bona fide move into the Winton Woods School District. Thus, she stated that the issue before the Panel was whether athletics had been a motivating factor for the move. Watkins, who had appeared at the hearing on her daughter's behalf without counsel, explained that she and her husband had separated, and that she and Paige had moved to an apartment in the Winton Woods School District. OHSAA staff as well as the three panel members asked Watkins specific questions about the move and whether there had been a problem between Paige and the basketball coach at Withrow.

{¶30} Watkins responded:

What happened-I'm not really sure. First of all, I'm more of a sit back and observe parent. I don't say much. The very last game of the year, Alexxus played for a minute. After the game was over, my husband and I, we went to the coach and we asked why Alexxus barely played. She started. Everybody on the bench – everybody on

13

the bench was asking the same question. He stated that she wasn't focused * * * And he basically went on to say that there was some things that happened in the locker room, which I didn't really get into. He addressed it. It wasn't that big of an issue with us.

{¶31} Watkins was also asked whether it had entered her mind that by transferring schools Paige might not be able to play. Watkins replied, "No, it never entered my mind. I had no idea. No. This all – This comes completely out of the box." When the panel member further inquired if this would have changed her mind about moving, Watkins replied, "If she couldn't play? Um, probably. Because my daughter has been through enough. She enjoys basketball. But probably, I don't –." The panel member responded, "Okay. That fine." Watkins then stated, "Well probably. If I had known I was going to come up here and take the day off work, yeah, probably."

{¶32} Darren Braddix, the Athletic Director at Withrow, also appeared before the Panel. He stated that after Paige's altercation with the coach her behavior changed, and added:

And the following, I would say, quarter and a half of school, Alexxus really spent the last part of that time saying, I'm transferring. I'm leaving. I'm not playing here. I don't want to be here. I'm leaving. I'm going to go to Winton Woods. I mean, she just—she was adamant that she couldn't wait to get out of there * * * Like I said, the teammates and principals and a lot of faculty and staff—I mean a lot of what she said was heard and was said to a lot of them. So it wasn't just the athletic department. It was the entire

school, pretty much, knew because she had it made known—I'm going to Winton Woods. I can't wait to play you guys * * *.

Braddix stated that Paige's comments along with the following facts—(1) her AAU team practiced at Winton Woods, (2) her AAU coach is a Winton Woods assistant coach, (3) several of her AAU teammates played for Winton Woods, and (4) the new coach at Withrow had reached out to Paige to smooth things over, but Paige had responded that she was "not going to feel comfortable coming back"—led Withrow administrators to believe that Paige's move to Winton Woods was athletically motivated.

{¶33} After Braddix had spoken, Watkins was given an opportunity to respond. She stated that during the end of the previous school year Paige knew they would be moving, but she didn't know where. She also said that Paige's transfer to Winton Woods had nothing to do with playing AAU basketball there. The Panel accepted a letter from Watkins, which detailed the reasons for the move. It also accepted a copy of the lease that Watkins had signed on May 17, 2012, for the apartment in the Winton Woods school district. The Panel unanimously affirmed the commissioner's ruling.

{¶34} Paige then filed suit in the common pleas court seeking a preliminary injunction to enjoin the OHSAA from enforcing the transfer eligibility rule against her and from penalizing Winton Woods for permitting her participation in athletics. The trial court held a hearing on the complaint. It permitted Paige, Watkins, Steven Sanders, Paige's AAU coach, David Lumpkins, the assistant principal and assistant girls basketball coach at Winton Woods, and OHSAA Associate Commissioner Moore to testify. At the conclusion of the hearing, the trial court granted Paige's request, finding that the OHSAA's decision to deny her

eligibility was fraudulent, arbitrary, and mistaken; that the OHSAA had violated her fundamental due-process rights; and that Paige would be likely to succeed on the merits at trial.

{¶35} In reaching these conclusions, the trial court found that the OHSAA's determination that Paige's move had been athletically motivated was arbitrary and fraudulent because it had been based solely upon the testimony of Braddix, who had been upset that Paige had left Withrow. The trial court found that Braddix's testimony before the OHSAA and at the hearing for preliminary injunction lacked credibility because it had been based upon hearsay statements. The trial court then found that the testimony from Watson and Paige, and their witnesses' testimony as to a nonathletic motivation for the move, was more credible.

{¶36} The trial court further found that Paige was likely to succeed on the merits of her claim that the OHSAA's decision to deny her eligibility was fraudulent, arbitrary, and mistaken and that the OHSAA had violated her fundamental due-process rights. The trial court held that the OHSAA had failed to afford Paige "fundamental due process." It focused upon the fact that Paige had not been given the right to compel witnesses or to cross-examine Braddix during the OHSAA appeal hearing. Finally, the trial court found that the OHSAA had made an arbitrary or mistaken interpretation of the requirement in Exception One that "both parents" must make a bona fide legal change of residence. As a result, the trial court restrained the OHSAA from enforcing transfer Bylaw 4-7-2 against Paige and from taking any adverse action against Paige or Winton Woods based upon its determination that Paige was eligible to participate in athletics during her senior year at Winton Woods.

### *The OHSAA's Appeal is Not Moot*

{¶37} I agree with the majority that before we can reach the merits of the OHSAA's arguments on appeal, we must determine if the OHSAA's appeal is moot. Paige has filed a motion to dismiss the appeal on this basis, which this court deferred for resolution with the merits of the OHSAA's appeal. She argues that because the basketball season has ended and she has graduated from Winton Woods, there is nothing for this court to adjudicate and that the OHSAA's appeal is moot.

{¶38} I also agree with the majority that the general rule with respect to the issue of mootness is that an actual case or controversy must exist at all stages of appellate review. *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 748, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 10. Only in rare instances such as where the question presented for review is of great public interest, concerns a constitutional question, or involves exceptional circumstances capable of repetition yet evading review, will this court decide an otherwise moot case. *Schwabb v. Lattimore*, 166 Ohio App.3d 12, 2006-Ohio-1372, 848 N.E.2d 912, ¶ 12 (1st Dist.).

{¶39} In determining whether appeals from preliminary injunctions involving the OHSAA are moot, Ohio appellate courts have looked to Sixth Circuit case law. In *Sandison v. Michigan High School Athletic Assn.*, 64 F.3d 1026, 1030 (6th Cir.1995), the Sixth Circuit held that the first part of a preliminary injunction which had permitted the plaintiffs to participate in the track season at their respective high schools was moot and did not fit within the "capable of repetition yet evading review" exception to mootness. The Sixth Circuit's holding was based on the fact that the track season had ended, and the students' graduation from high school had eliminated any reasonable possibility that they would be subject to the same action again. *Id.*

{¶40} The Sixth Circuit concluded, however, that the case was not moot with regard to the second part of the preliminary injunction, which had prohibited the Michigan High School Athletic Association ("MHSAA") from penalizing the respective high schools for allowing the students to compete. *Id.* Based on provisions in the MHSAA's bylaws that allowed victories to be forfeited and individual performances to be erased, the Sixth Circuit concluded that the students still had an interest in preventing the MHSAA from erasing from the records both their team victories and their individual performances. *Id.*

{¶41} Two years later, in *McPherson v. Michigan High School Athletic Assn.,* 119 F.3d 453, 458, (6th Cir.1997), the Sixth Circuit, sitting en banc, followed its earlier decision in *Sandison.* It held that the first part of a preliminary injunction, which had permitted a plaintiff to participate in the basketball season at his respective high school, was moot and did not fit within the "capable of repetition yet evading review" exception to mootness. *Id.* at 459. But it concluded that the second part of the injunction, which had prohibited the MHSAA from taking "any action which would cause the school district to be penalized for Plaintiff's participation in interscholastic athletic competition," still presented a live controversy. *Id.*

{¶42} In reaching this conclusion, the court considered the student's complaint, which had requested that the district court restrain the MHSAA from "taking any action that would cause the school district to be penalized for the student's participation in interscholastic activities, including * * * requiring that any games be forfeited." *Id.* It also considered the MHSAA's bylaws, which expressly provided that if a student was ineligible, but nonetheless, allowed to play because of a court-ordered injunction that the MHSAA shall

'require all victories to [be] forfeited to opponent,' and may vacate or strike 'that individual or team records and performances achieved during participation by such ineligibles, if the injunction is subsequently reversed or finally determined by the courts that injunctive relief is not or was not justified.'

*Id.*

{¶43} The Sixth Circuit noted that the MHSAA had asked it to reverse the trial court's preliminary injunction and to determine that injunctive relief was not justified. Thus, the relief sought by the MHSAA in its appeal, the Court stated

would if granted, make a difference to the legal interest of the parties because the MHSAA would then be required to forfeit to Huron's opponents those team victories in which McPherson participated, and could vacate or strike the records of McPherson and his basketball team, a course of events that McPherson specifically sought to prevent in his suit, and that the district court specifically ordered was prohibited.

*Id.* at 458, citing *Crane v. Indiana High School Athletic Assn.*, 975 F.2d 1315, 1318 (7th Cir.1992). Thus, the court held that because the student had an interest in preventing the MHSAA from erasing his team victories and his own performance, the controversy remained live. *Id.* at 459, quoting *Sandison*, 64 F.3d at 1029.

{¶44} In *Dankoff v. Ohio High School Athletic Assn.*, 9th Dist. Summit No. 24076, 2008-Ohio-4559, the Ninth District Court of Appeals dismissed the OHSAA's appeal of an order enjoining the OHSAA from prohibiting a student from participating in athletics during his senior year. The Ninth District held that the appeal was moot because the student had graduated and there was no longer a live controversy regarding his participation in high school athletics. *Id.* at ¶ 4, relying on

*Sandison*, 64 F.3d 1026. The Ninth District distinguished *Sandison*, noting that the trial court's injunction had only restrained OHSAA from preventing the student from bowling on the high school team, and nothing more. *Dankoff*, 2008-Ohio-4559, at ¶ 4, and fn. 1. Although the OHSAA had argued that a live controversy still existed because penalties could be imposed on the school under the association's bylaws, the Ninth District noted that OHSAA's bylaws in their entirety were not in the record. *Id.* The Ninth District, therefore, dismissed the appeal as moot. *Id.*

{¶45} In *Ulliman v. Ohio High School Athletic Assn.,* 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763 (2d Dist.), the Second District Court of Appeals held that an appeal by the OHSAA from a preliminary injunction—which had enjoined it from prohibiting Ulliman's participation in interscholastic athletics during his senior year at Catholic Central High School and from taking adverse action against Ulliman or Catholic Central for allowing Ulliman to participate—was not moot even though Ulliman had filed a notice stating that he had received surgery for a "season-ending injury" and was no longer playing high school sports. *Id.* at ¶ 28.

{¶46} The Second District held that the OHSAA's appeal was not moot because the "injunction in the present case [wa]s like the one granted in *Sandison*, [it] had enjoined [the] OHSAA from taking action against either Ulliman or Catholic Central." *Id.* at ¶ 33. The Second District further noted that the "OHSAA [had] also submitted a complete copy of its bylaws, which provide[d] for forfeitures of all athletic contests where ineligible players ha[d] been used. Other sanctions [we]re also available including forfeiture of all championship status, fines, and return of financial receipts." *See id.,* citing OHSAA Bylaws, 11-2-1 and 11-2-3, and OHSAA Bylaws, 12-1-1 through 12-1-4. Accordingly, the Second District held that OHSAA's

appeal was not moot, and that it would "consider OHSAA's argument that the trial court [had] erred in issuing the injunction." *Id.*

{¶47} In this case, it is undisputed that Paige has graduated and is no longer playing high school basketball. Thus, there is no live controversy regarding the transfer rule or her participation in athletics at Winton Woods. Therefore, the portion of the trial court's injunction which had permitted her to play basketball is moot.

{¶48} However, in Paige's amended complaint she specifically requested that the trial court restrain the OHSAA from not only prohibiting her from playing basketball as provided under Bylaw 4-7-2, but also from "penalizing Winton Woods for Paige playing basketball at that school" under Bylaw 11-1-4. Sanctions under Bylaw 11-1-4 could include, inter alia, the erasure of Paige's individual game and team performances, as well as the forfeiture of team victories in which Page played. The trial court's judgment entry provided:

> This Court hereby grants the preliminary injunction sought by Paige. As such, the OHSAA, as well as their agents, servants, employees, attorneys, and all persons in active concert and participation with them are hereby enjoined from prohibiting Paige from participation in interscholastic athletics during her senior year at Winton Woods. This court also enjoins OHSAA from taking adverse action against Allexus [sic] or against Winton Woods for allowing Allexus [sic] to participate in athletics.

{¶49} According to the OHSAA's bylaws, which were admitted into evidence at the hearing on the preliminary injunction, the OHSAA has the authority to impose the following sanctions upon Paige and Winton Woods if its appeal is successful in this case.

21

## BYLAW 11 — PENALTIES

**11**-1-**1** Penalties for violation of the OHSAA Constitution, Bylaws and Regulations shall be imposed by the Commissioner or another administrative staff member designated by the Commissioner.

**11**-1-**2** Penalties include: suspension, forfeiture of games, forfeiture of championship rights, probation, reclamation of expenses for the conduct of investigations and all other fees/expenses associated therewith, public censure, denial of participation or fines not to exceed $10,000 per occurrence or such other penalties as the Commissioner deems appropriate.

**11**-1-**4** If a lawsuit is commenced against the OHSAA seeking to enjoin the OHSAA from enforcing any or all of its Constitution, bylaws, sports regulations, decisions of the OHSAA, and an Order from a Court of proper jurisdiction is subsequently either voluntarily vacated, or stayed, or reversed or otherwise determined by the Courts that the equitable relief sought is not or was not justified, the Commissioner may impose any one or more of the following in the interest of restitution and fairness to other member school's (sic) athletes:

a) Require that individual or team records and performances achieved during such participation be vacated or stricken.

b) Require that team victories be forfeited to opponent.

c) Require that team or individual awards earned during such participation be returned to the Association.

d) Require the return of any financial receipts realized from tournament participation.

e) Impose a monetary penalty commensurate with the expense to the OHSAA for the litigation.

{¶50} The OHSAA argues, in part, that a live controversy exists because Paige has an interest in preventing the OHSAA from erasing her individual and team performances and requiring the forfeiture of her team's victories. The majority responds that Paige ". . . has no such interest as noted in the motion to dismiss this appeal." I must disagree. The motion to dismiss does not set forth a disclaimer of the interest Paige asserted in her amended complaint—to protect her individual and team performances and her team's record of game victories—by seeking to prevent the OHSAA from exercising its authority under Bylaw 11-1-4. Thus, a live controversy remains between Paige and the OHSAA. If this court were to grant the relief sought by the OHSAA in this appeal, the legal interests of both Paige and the OHSAA would be affected—Paige's interest in protecting her individual and team performances and the OHSAA's vindication of its governing authority.

{¶51} The majority states that Paige's attorney, during oral argument, submitted that she will not be "adversely affected" if Winton Woods were to be penalized. This court should not countenance a party's effort to abandon on appeal an interest the party specifically advanced in the trial court when the relief sought by the appealing party, if granted, would make a difference to that stated interest. Here, Paige specifically sought to enjoin the OHSAA from sanctioning or penalizing Winton Woods under its rules and was granted this relief.

{¶52} In this case, to find no live controversy as the majority does, strips the OHSAA of its opportunity to realize the relief it seeks. Here, the OHSAA seeks

23

not only to vindicate its governing authority, but also to exercise its discretion to impose sanctions against its member schools under Bylaw 11-1-4—a result which Paige specifically sought to prohibit. In this appeal, by affirming Paige's claimed disinterest, the majority permits a situation whereby cases like this would always evade review.

{¶53} Furthermore, I believe the majority reads the penalties that the OHSAA may impose upon Paige too narrowly when it states that our record does not demonstrate that Paige had set any records or won any awards, and therefore, a live controversy between Paige and the OHSAA does not exist. While the penalties the OHSAA may impose can encompass the vacating or striking of any awards or records that Paige has individually earned, the OHSAA may also require that her individual "performance achieved" during her participation be vacated or stricken. Her "performance achieved" would encompass the record of statistics for any game she participated in at Winton Woods, and would include, among other things: assists, blocks, points scored, or steals.

{¶54} Likewise, the fact that Winton Woods is not a party to this appeal is irrelevant to a determination that a live controversy exists in this case. In *Ulliman*, *Sandison*, and *McPherson*, none of the schools appeared before the appellate courts, yet the courts found that a live controversy remained between the student and the athletic association. Therefore, I agree with the OHSAA that under the Second District's decision in *Ulliman* and the Sixth Circuit's opinions in *Sandison* and *McPherson*, the portion of the trial court's preliminary injunction which prohibits "OHSAA from taking adverse action against Allexus [sic] or against Winton Woods for allowing Allexus [sic] to participate in athletics," is not moot.

{¶55} I acknowledge, as pointed out by the majority, that both the Seventh and Eleventh Circuits have held that the possibility of retroactive penalties by a high school athletic association does not prevent an appeal from being moot where a possible penalty is forfeiture of team victories and the school is not a party to the appeal, and there is no evidence that the student athlete won any awards or achieved any records during their performances. *See Johnson v. Florida High School Activities Assn., Inc.*, 102 F.3d 1172, 1173 (11th Cir.1997); *Jordan v. Indiana High School Athletic Assn., Inc.*, 16 F.3d 785, 788-89 (7th Cir.1994). In those cases, however, the Seventh and Eleventh Circuits did not set forth the penalty provisions of the athletic associations. So we do not know if the penalty provisions encompassed the vacating or striking of any records of the student's individual performances. Furthermore, there is nothing to suggest that the students in those cases, like the student in *McPherson*, sought to prohibit the athletic associations from taking any action against the schools for which they participated.

{¶56} Here, however, there is no dispute that Paige participated in basketball games at Winton Woods following the trial court's issuance of the preliminary injunction. Therefore, a record of her "achievement" during those performances exists. Given that Paige specifically sought to prevent the OHSAA from taking any action to penalize Winton Woods, which would encompass erasing her own record of performance and any team victories, I believe the Sixth Circuit's analysis in *Sandison* and *McPherson* is more on point with the facts in this case.

{¶57} I would also point out that the Eighth and Tenth Circuits have, likewise, held that an athletic association's appeal of an injunction, which had permitted a student's participation in athletics, was not moot even though the student had graduated, because the student had an interest in preventing the athletic

25

association from erasing team victories and individual performances. *Pottgen v. Missouri State High School Activities Assn.*, 40 F.3d 926 (8th Cir.1994) (holding that although a student had graduated from high school, mooting the portion of an injunction permitting him to play high school baseball, a "live controversy still exist[ed] regarding the portion of the injunction which prohibited the MSHSAA from imposing sanctions upon a high school for whom or against whom Pottgen [had] played"); *Wiley v. Natl. Collegiate Athletic Assn.*, 612 F.2d 473, 476 (10th Cir.1979) (holding that a college track athlete's graduation did not completely moot an injunction allowing him to compete in college athletics because his victories, records, and awards were still at issue). Thus, I cannot say that the OHSAA's appeal is moot.

{¶58} But even assuming arguendo that the underlying controversy between Paige and the OHSAA no longer exists, I would not dismiss its appeal as moot because the issues presented in the OHSAA's appeal involve matters of great public importance which affect virtually all public and private middle and high schools in the state that maintain programs of interscholastic athletics. Over three hundred thousand students statewide participate in sports under the OHSAA eligibility bylaws. The primary purpose of the eligibility bylaws is to provide for fair and equitable governing of student eligibility for students who participate in athletics in Ohio.

{¶59} Here, the trial court held that the OHSAA had violated a student's due-process rights and had engaged in fraud in denying her eligibility to play basketball, and it did so by engaging in a de novo review. Resolution of this issue is vital because what is at stake is the governance authority of the OHSAA, which has an interest in protecting the integrity of its rules and vindicating the rights of its member schools, who rely on the fair application of the eligibility bylaws, as well as

ensuring that the OHSAA not be required to litigate under a de novo review. Thus, the outcome of the case is not only important to the OHSAA, but to its member schools, and to those students who do abide by the OHSAA's eligibility rules.

{¶60} In that respect, this case is similar to *In re Suspension of Huffer from Circleville High School*, 47 Ohio St.3d 12, 546 N.E.2d 1308 (1989), where Mark Huffer appealed his suspension from Circleville High School by the Board of Education because he allegedly attended wrestling practice while under the influence of alcohol. By the time the matter had reached the Ohio Supreme Court, Huffer had graduated from high school. *Id.* at 14. The issue before the Supreme Court on appeal was whether the school board's policy on alcohol was unreasonable and overbroad. *Id.*

{¶61} The Ohio Supreme Court stated that the issue was "certainly capable of repetition, yet it may 'evade review, 'since students who challenge school board rules generally graduate before the case winds its way through the court system.' " *Id.* In reaching this conclusion, the Supreme Court did not limit its analysis to Huffer, but rather looked at students in general. The court further found that "the issue of the authority of local school boards to make rules and regulations is of great public interest." *Id.*

{¶62} Because this case involves the OHSAA's ability to make and enforce its eligibility rules and regulations among its member schools, who comprise virtually every public and private middle and high school in Ohio, this court should decide the merits of the case under the public interest exception to the mootness doctrine. Accordingly, I would deny Paige's motion to dismiss the appeal as moot and address the merits of the OHSAA's appeal.

### *The OHSAA's Arguments on Appeal*

{¶63} The OHSAA raises five assignments of error. In its first assignment of error, the OHSAA argues that the trial court erred in reversing the decision of the OHSAA Appeals Panel when its decision was supported by reliable, probative, and substantial evidence. In its second and third assignments of error, the OHSAA argues that the trial court erred in reversing the decision of the OHSAA Appeals Panel where the trial court conducted a de novo evidentiary hearing, and not only substituted new evidence for the evidence considered by the OHSAA Appeals Panel, but also substituted its determination as to the credibility of witnesses for the determination of the OHSAA Appeals Panel. In its fourth assignment of error, the OHSAA argues that the trial court erred by disregarding the Ohio Supreme Court's holding in *Ohio High School Athletic Assn. v. Judges of the Court of Common Pleas of Stark Co.*, 173 Ohio St. 239, 181 N.E.2d 261 (1962), by creating its own rules and standards for hearings on eligibility determinations in place of the rules and standards approved by member OHSAA schools. In its fifth assignment of error, the OHSAA argues that "the trial court erred as a matter of law in granting a preliminary injunction against the OHSAA where it had committed any of the above-listed errors." Because the OHSAA's assignments of error are interrelated, I address them together.

### Standard of Review for Preliminary Injunction

{¶64} A trial court's decision granting a preliminary injunction is reviewed under an abuse of discretion standard. *Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶65} A party seeking a preliminary injunction must show by clear and convincing evidence: (1) a substantial likelihood that the party will prevail on the merits, (2) the party will suffer irreparable injury or harm if the requested injunctive relief is denied, (3) no unjustifiable harm to third parties will occur if the injunctive relief is granted, and (4) the injunctive relief requested will serve the public interest. *The Proctor & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267, 747 N.E.2d 268 (1st Dist.2000); *Ulliman*, 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763, at ¶ 34; *see* Civ.R. 65(B). While no one factor is to be given controlling weight, a trial court errs in granting a preliminary injunction where the plaintiff is unlikely to succeed on the merits. *Toledo Police Patrolman's Assn., Local 10, IUPA, AFL-CIO-CLC v. Toledo*, 127 Ohio App.3d 450, 469, 713 N.E.2d 78 (6th Dist.1988); *see Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997).

### Likelihood of Success on the Merits

{¶66} The Ohio Supreme Court has held that the decisions of the tribunals of the OHSAA with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive. *State ex rel. Ohio High School Athletic Assn. v. Judges of Court of Common Pleas of Stark Cty.*, 173 Ohio St. 329, 181 N.E.2d 261 (1961), paragraph three of the syllabus. Thus, in order to succeed on the merits of her claim, Paige must show by clear and convincing evidence that the OHSAA's decision was the product of fraud, mistake, collusion, or arbitrariness.

{¶67} The trial court held that Paige was likely to succeed on the merits of her claim because (1) the Appeals Panel's determination that Paige's move had been athletically motivated was arbitrary and based upon the fraudulent, hearsay testimony of Darren Braddix; (2) the OHSAA had not afforded Paige fundamental

29

due process; and (3) the OHSAA had made an arbitrarily and/or mistaken interpretation of the "both parents" requirement in Exception One.

### *Athletic Motivation for the Move*

**{¶68}** The OHSAA argues the trial court erred in concluding that it had acted arbitrarily and fraudulently in holding that Paige's transfer to Winton Woods had been athletically motivated.

**{¶69}** The OHSAA contends that in reaching this conclusion, the trial court exceeded the scope of its review under *State ex rel. Ohio High School Athletic Assn. v. Judges of Court of Common Pleas of Stark Cty.*, 173 Ohio St. at paragraph three of the syllabus, 181 N.E.2d 261, by conducting a de novo review of the proceedings before the OHSAA, rehearing the matter as if the OHSAA proceedings had not occurred, and then substituting the new evidence from the hearing on the preliminary injunction for the evidence considered by the OHSAA Panel. The OHSAA argues that because the transcript of the hearing before the Appeals Panel contained sufficient, reliable, probative, and substantial evidence to support the Panel's finding, the trial court erred in admitting testimony and then substituting its judgment for that of the OHSAA Appeals Panel. I agree.

**{¶70}** A court may, in its discretion, hold a hearing on a motion for preliminary injunction. *See Executive Mgt. Servs., Inc. v. Cincinnati State Technical and Community College*, 10th Dist. Franklin No. 11AP-600, 2011-Ohio-6767, ¶ 6-12. "In determining whether a hearing is appropriate, the court must exercise its discretion, assess the nature of the allegations, and circumstances, and determine whether a hearing is warranted for that particular motion." *Id.* at ¶ 12. Civ.R. 65 is silent as to the scope of the hearing.

**{¶71}** In her complaint for a preliminary injunction, Paige did not allege or rely upon facts outside the proceedings before the OHSAA to support her claim that the OHSAA's decision was the product of mistake, arbitrariness, fraud, or collusion and that she had been denied due process. Had Paige made such an allegation, the trial court could have, in its discretion, chosen to hear new testimony. The trial court could have then engaged in fact finding with respect to whether the new evidence before it demonstrated that the OHSAA's decision was fraudulent, collusive, mistaken, or arbitrary.

**{¶72}** Absent such allegations, however, the trial court was not free to take new evidence, particularly when that evidence could have been presented to the OHSAA, and to then use that evidence de novo to substitute its judgment for that of the OHSAA. Rather, the trial court was confined to determining whether the evidence that was before the OHSAA demonstrated that its decision was fraudulent, collusive, mistaken, or arbitrary.

**{¶73}** Ohio appellate courts have held that a decision of the OHSAA is arbitrary when a bylaw in question has not been properly adopted by member schools of the OHSAA in compliance with OHSAA regulations or when the bylaw in question is "without determining principles." *Ulliman*, 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763, at ¶ 61-63. They have additionally held that an OHSAA decision is arbitrary where it "is not supported by reliable, probative, and substantial evidence and is not in accordance with the law." *See Scott v. Ohio High School Athletic Assn.*, 5th Dist. Stark No. 1999CA00269, 2000 Ohio App. LEXIS 3193, *24 (July 10, 2000), quoting *Massillon City School Dist. Bd. of Edn. v. Ohio High School Athletic Assn.*, 5th Dist. Stark No. 7247, 1987 Ohio App. LEXIS 9541 (Nov. 5, 1987).

{¶74} Here, no evidence was presented that Bylaw 4-7-2 was improperly adopted in violation of OHSAA regulations or that Exception One was without determining principles. Nor was there evidence that the OHSAA Panel's decision to deny Paige eligibility under Exception One was arbitrary and fraudulent. The record from the proceedings before the OHSAA shows that the Appeals Panel considered all the evidence before it, including the hearsay testimony by Braddix, and found evidence pointing toward a primarily athletic reason for the move to be more credible than the evidence to the contrary. Although Watkins denied that her family had any issue with the Withrow basketball coach for failing to play Paige during the last game, her statements before the Appeals Panel supported Braddix's testimony that Paige had been benched by the coach after one minute in a playoff game where she had started.

{¶75} Watkins' testimony also supported the conclusion that, although a "sit back and observe" parent, she was concerned enough to speak to the coach immediately after the game. And although Watkins denied that Paige's move to Winton Woods was motivated by the desire to play basketball there, she had no response to Braddix's description of Paige's declarations that she "was transferring to Winton Woods and couldn't wait to play us." Watkins, furthermore, told the OHSAA Panel that had she known Paige would have been ineligible to play basketball at Winton Woods, she probably would not have made the move. The Panel, moreover, had evidence before it, that Watkins had signed a lease for the apartment on May 17, 2012, while Paige was still attending Withrow High School.

{¶76} The trial court ignored this evidence before the OHSAA panel, instead focusing solely on Braddix's testimony. The trial court held that because Braddix's testimony was based upon hearsay, the OHSAA had erred in relying upon

it because it was fraudulent and arbitrary. The trial court then disregarded this evidence in light of the fact that some of it had been presented through hearsay testimony. But the OHSAA is a private association that employs an informal hearing process and is not bound by all of the rules of evidence. Thus, its decisions may be based in part on hearsay. Moreover, it was within the OHSAA's purview to consider both direct and indirect evidence and to weigh it for what it was worth.

{¶77} In granting the preliminary injunction, the trial court afforded more weight to the testimony from Paige, her mother, and her AAU and Winton Woods coaches at the hearing on the preliminary injunction, finding their testimony to be more credible than the testimony given by Braddix, and Moore's testimony as to Paige's and her mother's motivation for the move. Because the record does not support the trial court's conclusion that OHSAA's determination, that Paige's transfer to Winton Woods had been primarily for athletics, was based upon fraud or arbitrariness, the trial court erred in finding Paige likely to succeed on that claim on this basis.

### Due Process

{¶78} The trial court also held that Paige had not been afforded fundamental due process. It relied upon the fact that Paige had not been entitled to compel witnesses before the Appeals Panel and she had not been entitled to cross-examine Braddix, the key antagonist to her eligibility to play at Winton Woods. But, participation in interscholastic sports is not a property right that gives rise to due-process protections under the Fourteenth Amendment to the U.S. Constitution or state constitutions. *See Menke v. Ohio High School Athletic Assn.,* 2 Ohio App.3d 244, 246, 441 N.E.2d 620 (1st Dist.1981); *Hamilton v. Tennessee Secondary School*

*Athletic Assn.*, 552 F.2d 681, 682 (6th Cir.1976) (holding that a student's interest in interscholastic athletics falls outside due-process protections).

{¶79} But even assuming arguendo that Paige was entitled to procedural due process, there is no evidence that she was denied the process she was due. Following Winton Woods's request for an eligibility ruling, Moore, the associate commissioner, provided Winton Woods with a letter detailing the reasons for its finding that Paige was ineligible. Paige's mother, Watkins appealed the Commissioner's decision to the OHSAA Appeals Panel. Watkins appeared at the hearing on her daughter's behalf without counsel or witnesses. She gave a statement, answered questions by the OHSAA, presented documentary evidence, and was afforded an opportunity to respond to Braddix's statements at the hearing. Thus, Paige was afforded the same process during the appeals procedure that Winton Woods and Withrow, as members schools, would have been afforded. As a result, the trial court erred in finding that Paige was likely to succeed on the merits of her due-process claim that her right to fundamental due process had been violated.

### *"Both Parents" Requirement in Exception One*

{¶80} Finally, the OHSAA argues that the trial court erred in justifying its decision to issue the preliminary injunction on the basis that the OHSAA had mistakenly interpreted the "both parents" requirement in Exception One to the transfer bylaw. I agree.

{¶81} Associate Commissioner Moore conceded at the beginning of the OHSAA Appeals hearing that Watkins had made a bona fide legal change of residence. Thus, the sole focus of the hearing was whether Paige's transfer to the Winton Woods School District had been athletically motivated. Because the OHSAA's decision to deny Paige's eligibility was based solely upon its determination

that her move had been athletically motivated, the trial court's interpretation of the "both parents" requirement in Exception One was unnecessary to a determination of the issues before it. Consequently, the trial court erred in finding Paige likely to succeed on the merits on this basis when it did not even serve as the reason for the OHSAA's decision that she did not meet the criteria for application of Exception One.

### Conclusion

{¶82} Accordingly, I agree with the OHSAA that the trial court abused its discretion when it found that Paige had a likelihood of success on the merits of her claim. As a result, I need not address the remaining prongs of the preliminary injunction standard. *See Ulliman*, 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763, at ¶ 70. Therefore, I would sustain the OHSAA's five assignments of error, reverse the judgment of the trial court, and vacate the preliminary injunction. I further agree that the majority's determination that the OHSAA's appeal is moot directly conflicts with the Second Appellate District's opinion in *Ulliman v. Ohio High School Athletic Assn.,* 184 Ohio App.3d 52, 2009-Ohio-3756, 919 N.E.2d 763 (2d Dist.). I, therefore, support its determination that this case should be certified to the Supreme Court for review on this basis.

Please note:

The court has recorded its own entry this date.